John G. McKAY, Jr., et al.,
Plaintiffs-Appellants,

v.

UNITED STATES of America,
Defendant-Appellee.

No. 74–3169.

United States Court of Appeals,
Fifth Circuit.

March 31, 1975.

Kenneth F. Claussen, Miami, Fla., for plaintiffs-appellants.

Robert W. Rust, U. S. Atty., Robert Reynolds, Lawrance B. Craig, III, Asst. U. S. Attys., Miami, Fla., Jay R. Weill, Tax Div., Scott P. Crampton, Asst. Atty. Gen., Gilbert E. Andrews, Acting Chief, Appellate Sec., Leonard J. Henzke, Jr., William S. Estabrook, III, U. S. Dept. of Justice, Washington, D. C., for defendant-appellee.

Before TUTTLE, COLEMAN and SIMPSON, Circuit Judges.

PER CURIAM.

The taxpayers in this suit to recover income taxes paid on income derived from estate assets attributable to a widow's dower portion of the estate collected after a deficiency assessment by the Commissioner of Internal Revenue appeal from a judgment against them by the district court.

We affirm on the basis of the district court's opinion. In its Finding of Fact number eight the district court found that a prior suit by the widow to recover federal income taxes, in which a consent judgment was entered in favor of the widow and against the United States, constituted a determination that the mesne profits and capital gains distributed to her in 1967 were taxable to the estate in the years in which the income was earned. This determination that the estate, and not the widow, owed taxes on mesne profits and capital gains attributable to estate assets allotted to the widow's dower portion of the estate prior to distribution constituted an incon-

sistent determination within the meaning of Internal Revenue Code of 1954, §§ 1311–1315, thereby permitting the Commissioner to reopen the tax years of the estate which otherwise would be closed by the Code's three year Statute of Limitations, IRC § 6501(a).

Affirmed.

## APPENDIX

## IN THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF FLORIDA

JOHN G. McKAY, JR., and THE FIRST NATIONAL BANK OF MIAMI, as Co-Executors of the Estate of H. H. WOODSMALL, deceased, Plaintiffs

v.

UNITED STATES OF AMERICA, Defendant

CIVIL NO. 73–1784–Civ–JLK

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

This suit for refund of income taxes came on for trial before the Court without a jury. Now, upon consideration of the evidence and the arguments of counsel, the Court finds as follows:

## FINDINGS OF FACT

1. The plaintiffs, John G. McKay, Jr., and the First National Bank of Miami (hereinafter referred to as the estate), are the duly appointed Co-Executors of the Estate of H. H. Woodsmall, deceased, who died on September 19, 1961. Lelia C. Woodsmall is the surviving widow of H. H. Woodsmall. The decedent's probate estate was administered in the County Judges' Court in and for Dade County, Florida. Within the time required by Florida law, Mrs. Woodsmall elected on July 12, 1962 to take her statutory right of dower in her husband's estate.

2. On April 22, 1963, the County Judges' Court in and for Dade County, Florida, ordered a partial distribution of dower to Mrs. Woodsmall in the amount of $312,500. The distribution was $250,000 in cash and 125 shares of stock of Gulfstream Park Racing Association, Inc. On July 28, 1966, the County Judges' Court ordered what was labeled to be the final distribution of dower from the probate assets of the Estate of H. H. Woodsmall. However, the Court retained jurisdiction to determine the amount of capital gains due Mrs. Woodsmall and the amount of income earned by the probate assets and collected by the Estate, from September 19, 1961 to and including July 28, 1966, which would be due Mrs. Woodsmall as mesne profits.

3. On May 26, 1967, the County Judge ordered the Executors to distribute, from the assets of the probate estate, the final amount due Mrs. Woodsmall as capital gains and a portion of estate income which was attributable pursuant to the Court's order awarding dower. This distribution of capital gains and estate income was made during the estate's fiscal year ended August 31, 1967. Pursuant to the court order, Mrs. Woodsmall received, during 1967 the following amounts:

As Capital Gains Distribution:

|  |  |
|---|---|
| Cash | $ 9,145.56 |
| Property—Parking Lot | 42,000.00 |
| Total | $51,145.56 |

Distribution of Mesne Profits:

|  |  |
|---|---|
| Cash | $49,790.94 |

4. The plaintiffs as co-executors of the estate of H. H. Woodsmall filed fiduciary income tax returns for the taxable years ending August 31, 1962 through 1966. On the returns for the years ending in 1962 through 1965, the plaintiffs reported and paid tax on all the mesne profits and capital gains earned by the estate which were attributable to Mrs. Woodsmall's dower rights. For the year ending August 31, 1966, the plaintiffs disclosed, but did not report as income the mesne profits or capital gains. For the years 1962 through 1966, Mrs. Woodsmall did not include in her tax returns any of the mesne profits or capital gains attributable to her dower interest in the decedent's estate.

5. In 1966 the Internal Revenue Service audited the 1962 through 1964

income tax returns of Mrs. Woodsmall. On March 21, 1966, the Service notified Mrs. Woodsmall that it had determined that she should have included annually in her gross income her share of the mesne profits and her portion of the capital gains attributable to her vested right of dower in her husband's estate. Since the estate had previously reported this same income on its returns for the years ending in 1962 through 1965, it filed protective claims for refund, pending the determination of the proper taxpayer to report the mesne profits and capital gains.

6. Subsequently, the Internal Revenue Service determined that the mesne profits attributable to the widow's dower rights were not includible in her income prior to the year of distribution nor includible in the fiduciary returns filed by the estate. Accordingly, the Service did not make the assessments against Mrs. Woodsmall as proposed on March 21, 1966. Moreover, the Service allowed the claims for refund filed by the estate. The following refunds were made to the estate which represented the tax attributable to the mesne profit and capital gains previously reported by the estate.

| YEAR | TAX | INTEREST | TOTAL | DATE OF CHECK |
|---|---|---|---|---|
| 8/31/62 | $3,709.29 | $1,095.46 | $4,804.75 | 11/17/67 |
| 8/31/63 | $13,647.16 | $2,880.85 | $16,528.01 | 11/17/67 |
| 8/31/64 | $4,284.06 | $749.71 | $5,033.77 | 11/17/67 |
| 8/31/65 | $5,627.57 | $1,028.74 | $6,656.31 | 11/27/68 |

There was no claim for refund filed by the estate for the year ending August 31, 1966 since the estate had never reported on its return the mesne profits or capital gains realized during that year.

7. On her 1967 return, Mrs. Woodsmall disclosed but did not include any of the mesne profits or capital gains she received from her husband's estate on May 26, 1967. The Internal Revenue Service audited the return of Mrs. Woodsmall for the year 1967 and determined that she should have reported $48,075.05 of the mesne profits she received from her husband's estate on May 26, 1967. She received a total of $49,790, but $1,715 was tax exempt interest from municipal bonds. The Service also determined that she should have reported the capital gains distribution of $51,145.56 she received from the estate on May 26, 1967. On March 10, 1969, the Service notified Mrs. Woodsmall of these adjustments.

8. Based on these adjustments, an assessment was made against Mrs. Woodsmall for the year 1967 in the amount of $34,975.48, plus interest. This assessment was paid by Mrs. Woodsmall and a claim for refund filed. Upon its disallowance, she filed suit in this Court for a refund of part of the taxes she had paid. (Civil No. 71–269–Civ–WM.) Mrs. Woodsmall contended in her complaint that the mesne profits and capital gains distributed to her were taxable to the estate in the years earned and thus taxable to her only under the provisions of Subchapter J of the Internal Revenue Code of 1954.

9. On September 14, 1971, the Court entered Judgment for Mrs. Woodsmall in her action against the United States. The Court, with Mrs. Woodsmall's and the Government's consent, held that the distribution made to Mrs. Woodsmall on May 23, 1967, from her husband's estate was governed by the holding in Rev.Rul. 71–167, 1971–1 Cum.Bull. 163.

10. On June 26, 1972, the estate herein filed suit against the United States in this Court for a refund of taxes paid on their return for the year ending August 31, 1967. (Civil No. 72–990–Civ–CA.) Previously, the estate had filed a protective claim for refund because of the claim for refund filed by Mrs. Woodsmall for the year 1967. The estate claimed that since the Court in Mrs. Woodsmall's action had determined that the distribution was governed by the provisions of Subchapter J of the Code, the estate was entitled to a corresponding deduction for the taxable year ended August 31, 1967.

11. Since the holding in Rev.Rul. 71–167, supported the estate's claim, the above-mentioned lawsuit was dismissed by the estate after the United States granted the plaintiffs' claim for refund

and refunded the amount claimed in the complaint.

12. On March 22, 1972, the Service determined that the mesne profits and capital gains earned by the estate for the years 1962 through 1966 were properly includible in the estate's fiduciary returns for those years. These items of income and capital gains were the same ones as to which the Service allowed the estate's claims for refund for the years 1962 through 1965, and which the plaintiffs did not report as income in the year 1966. Assessments were made against the plaintiffs for these years and subsequently paid by them. Claims for refund were filed and, upon their disallowance, the instant suit was filed.

13. During the years in issue the estate was not required nor did it distribute any mesne profits or capital gains to anyone. Therefore, under Rev.Rul. 71–167 and Section 641(a)(3) of the Internal Revenue Code of 1954, the mesne profits and capital gains attributable to Mrs. Woodsmall's dower rights and earned or realized by the estate during the years 1962 through 1966 were properly includible in the tax returns of the estate for those years. The estate did not contend in its claims for refund that this was erroneous. Rather, the plaintiffs contended that the assessments herein were barred by the statute of limitations, and in the alternative, contended that the defendant abused its administrative discretion by determining that Rev.Rul. 71–167, *supra,* applied retroactively to the tax years involved.

## CONCLUSIONS OF LAW

1. The Court has jurisdiction of the action and the parties under Title 28 U.S.C., Section 1346(a)(1).

2. Section 6501(a) of the Internal Revenue Code of 1954 requires that any assessment of tax must be made within three years after the return was filed. The Service is barred from making any assessment after that date except in certain circumstances which are not relevant to our inquiry here. The assessments against the instant estate for the taxable years ending August 31, 1962 through 1966 were made in 1972. Accordingly, they were barred by the statute of limitations unless the mitigation provisions of the Code are applicable.

3. Sections 1311 through 1315 of the Code, commonly referred to as the "mitigation provisions", entitle the Government or a taxpayer to reopen taxable years otherwise barred by the relevant statutory period of limitations contained in Section 6501. These sections of the Code provide rules for the correction of certain errors under circumstances specified in Section 1312, when one or more provisions of law, such as the statute of limitations, would otherwise prevent such correction. In most situations falling within these code sections, the correction of the effect of the error on a closed year can be made only if either the Commissioner or the taxpayer has taken a position in another taxable year which is inconsistent with the erroneous treatment of the item in the closed years. In order to be applicable, the mitigation provisions require the following:

1) a determination
2) which adopts a position maintained by (in this case) the taxpayer (in the present case, since the taxpayer is beneficiary of the statutory bar, it is his maintenance of the inconsistent position which must be shown. Section 1311(b)(1)(B));
3) and that position is inconsistent with the prior treatment of the item in question;
4) which brings about an unfair result described in one of the paragraphs of Section 1312.

4. The Court holds that all the above-mentioned conditions have been met and, therefore, the provisions of Section 1311 allowed the Commissioner of Internal Revenue to make these assessments notwithstanding the bar of the statute of limitations.

5. As an alternative argument, the plaintiffs claim that Rev.Rul. 71–167, should not have been applied to them

retroactively. Section 7805(b) of the Code provides that the Secretary or his delegate may prescribe the extent, if any, to which any ruling or regulation, relating to the internal revenue laws, shall be applied without retroactive effect. Accordingly, all revenue rulings are applied retroactively unless the Commissioner makes an affirmative act and declares that it will not be applied retroactively. Automobile Club of Michigan v. Commissioner, 353 U.S. 180, 77 S.Ct. 707, 1 L.Ed.2d 746 (1957).

6. Since Rev.Rul. 71–167 was published in order to correct a mistake of law enunciated in a prior Revenue Ruling, the Commissioner is not barred from retroactively correcting that mistake.

7. Defendant is entitled to judgment in accordance with the foregoing Findings of Fact and Conclusions of Law.

Dated this 4 day of June, 1974.

(s) James Lawrence King
UNITED STATES DISTRICT JUDGE